Jeffrey H. Boiler OSB No. 830219
Email: jboiler@boilerlawfirm.com
P.O. Box 101
Vida, OR 97488
Telephone: (541) 683-1901
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| BRYAN BURTON, | Case No. 2:16-cv-2154 |
| Plaintiff, | **COMPLAINT** |
| v. | Pursuant to 42 U.S.C. Sec. 1983 (First Amendment Retaliation, 14th Amendment procedural and substantive due process violations; Equal Protection Violations; Pendent State Claims) |
| CITY OF PRINEVILLE, acting by and through the PRINEVILLE POLICE DEPARTMENT, a municipal corporation, LES STILES, former Chief of Police, City of Prineville, in his individual capacity, | |
| | DEMAND FOR JURY TRIAL |
| Defendants. | PRAYER: $5,000,000.00 or an amount to be proven and awarded at trial, exclusive of punitive damages |

**PRELIMINARY STATEMENT**

1.

This action is an action for monetary relief, including where authorized by law both compensatory damages and punitive damages, together with Plaintiff's reasonable attorney's fees and costs, to redress Defendants' violations of Plaintiff's protected rights specified below, arising under both Federal law and State law as set forth with particularity herein.

COMPLAINT - 1

## JURISDICTION

2.

Jurisdiction is conferred upon this Court by 28 U.S.C. Sec. 1331, federal question jurisdiction, 28 U.S.C. Sec. 1343, civil rights jurisdiction, and under pendant State claim jurisdiction for all State claims arising from the same core of operative fact as the allegations of Federal law violation set forth below.

3.

Venue is within the District of Oregon pursuant to 28 U.S.C. Sec. 1391(b) as the claim arose entirely within this judicial district.

## PARTIES

4.

At all times material, Plaintiff Bryan Burton ("Plaintiff") was a resident of the state of Oregon and was employed as a police officer by the Prineville Police Department.

5.

Defendant City of Prineville ("the City") is a duly organized municipal corporation under Oregon law and operates the Prineville Police Department. It is located entirely within the political boundaries of Crook County, Oregon. As a public body, Defendant City of Prineville is liable for the tortious conduct of its agents and employees pursuant to ORS 30.260 and 30.265.

6.

Defendant Les Stiles ("Chief Stiles") was at all material times, the Chief of Police of the Prineville Police Department ("PPD"), the ultimate policy maker for Defendant's Police Department, and was acting under color of right, all within the course and scope of his employment.

COMPLAINT - 2

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7.

On or about October 22, 2009, Plaintiff was hired as a reserve police officer for Defendant City of Prineville.  On or about December 13, 2009, Plaintiff was hired by Defendant City as a part-time temporary police officer by Defendant City.  On or about September 16, 2010, Plaintiff was hired by Defendant City as a full-time permanent police officer employee.  He successfully completed his probationary period and thereafter continued in work for Defendant City in his capacity as a permanent, full-time police officer, without interruption until his termination from employment by Defendant City on or about November 14, 2014.   As a permanent non-probationary employee, Plaintiff was after completion of probation vested in his property right to continued public employment, within the meaning of the 14th Amendment to the U.S. Constitution, absent just cause for termination.  During the period of his service as a police officer for Defendant City, he performed his duties in an exemplary manner, and received Defendant City's highest employee award for those similarly situated to Plaintiff, Employee of the Year, for calendar year 2012.

8.

Plaintiff is married to Jasmine Burton, former lead Evidence Technician for Defendant City, who was at certain times material to this Complaint also a permanent, full-time employee of the Prineville Police Department.  She also performed her duties in an exemplary manner at all times during her employment, and resigned due to retaliation against her husband by Defendants as set forth with particularity below.

9.

While acting within the course and scope of his employment with Defendant City, Plaintiff arrested a young female adult for Driving Under the Influence of Intoxicants.  She proved to be the daughter of former Crook County Undersheriff James Gautney.  She pleaded guilty to the

charge.

10.

On or about August 11, 2014, Defendant City appointed Defendant Les Stiles, the former Sheriff of neighboring Deschutes County, Oregon, as their new Chief of Police.  He actively sought this position, though retired. His appointment followed a scandal which resulted in the termination from employment and criminal prosecution of the previous Prineville Chief of Police, Eric Bush, then also a General Officer in the U.S. Army National Guard.

11.

On or about the same day of his hiring as Chief of Police for Defendant City, Defendant Stiles issued a written directive to all police personnel stating in substance as follows:

"All past policies and practices that existed prior to August 11, 2014 [the date of appointment of Defendant Stiles to Chief of Police] are null and void…New policies will continue to evolve as needed."

This directive was intended to and did effectively abrogate the Defendants' duty under the 14th Amendment, and other applicable law, to either give notice or opportunity to be heard by any employee of Defendant City and in particular its Police Department, before being disciplined under the "new policies [which] will "continue to evolve as needed".  It also abrogated Defendants' duties to refrain from decisions which divested the property right of any public employee of Defendant, including Plaintiff, in an arbitrary, irrational or capricious manner.

12.

The procedure for termination of Plaintiff was undertaken pursuant to one of the "evolving" policies or practices referenced by Defendant Stiles in Paragraph 11 above, which was then used to justify the sham and retaliatory "investigation" of Plaintiff undertaken by Defendants to benefit

COMPLAINT - 4

Defendant Stiles in his personal and professional relationships, or to harm Plaintiff, or both.

13.

The purpose and intent of Defendant Stiles in making the directive referenced in Paragraph 11 above was to justify any discipline or other adverse action he chose to undertake, whether to benefit himself and his friends, or to harm others. This directive was effectively adopted and ratified by Defendant City and utilized to terminate Plaintiff without just cause from his vested public employment with Defendant City as set forth with particularity below.

14.

One of the "new" policies or practices of Defendant City's Police Department which Defendant Stiles established by his announcement set forth in Paragraph 11, and by his subsequent actions while Chief of Police, was to utilize an "outside independent investigator" to investigate internal police personnel disciplinary matters. Defendant Stiles was during the period of his employment with Defendant City, the sole and exclusive policy maker who determined which officers would be charged with disciplinary offenses, when, under what circumstances; for what reasons; which officers would thereby be "investigated" by an "outside independent" investigator. Pursuant to his "evolving" policy in this respect, he also decided who these handpicked 'independent investigators' would be. This policy and practice was utilized, ratified and adopted by Defendant City, and was part of the instrumentalities wrongfully used to terminate Plaintiff's vested public employment, and set forth with particularity above and below.

15.

Defendant Stiles was at all times material herein, the former work superior and personal friend of former Crook County Undersheriff James Gautney.

COMPLAINT - 5

16.

On or about September 5, 2014, less than one month after his appointment as Chief, and after Plaintiff made the arrest of Undersheriff Gautney's daughter as alleged above, Defendant Stiles then met with former Undersheriff Gautney and retained him on behalf of Defendant City to "investigate" Plaintiff for supposed work rule violations pursuant to his new, 'evolving' police personnel internal investigative "policy". Gautney was Defendant Stiles' friend and former subordinate at the time. He ultimately authored for Defendant Stiles a 33-page report expressly designed to result in a false impression of poor work performance by Plaintiff, the recent Employee of the Year of Defendant City. He did so in overt or covert cooperation and collusion with Defendant Stiles, for the express purpose of depriving Plaintiff of his vested property right in and to continued public employment, having no just cause for termination.

17.

Gautney authored this report as an agent of Defendants, and did so with the intent to benefit himself, his daughter, and Defendant Stiles, his former superior and friend, and also to harm Plaintiff.

18.

On or about September 8, 2014, to retaliate against Plaintiff for his arrest of Gautney's daughter and to conceal his own abuse of office thereby, Defendant Stiles began to cause a series of alleged work rule violations of a minor nature to be secretly compiled against Plaintiff. On that date, he was only ordered in a general way to 'be more thorough', but the very next day, September 9, 2014, Plaintiff was inexplicably placed on administrative leave "…regarding his work as a police officer". No reasons were given. However, Plaintiff was never returned to work, and was terminated without just cause pursuant to the policy and practice established by Defendant Stiles outlined above, on November 14, 2014, based in part on the report set forth in paragraph 19 below.

COMPLAINT - 6

19.

On or about October 15, 2014, former Undersheriff Gautney submitted to Defendants a 33-page report of alleged poor performance by Plaintiff, recently Employee of the Year. The report in no way discloses the personal motive to falsify or retaliate for the arrest by Plaintiff of Gautney's daughter. The report contained factual inaccuracies and false characterizations of evidence to reach the conclusion that Plaintiff had performed his duties as Police Officer poorly, and should thus be disciplined.

20.

On or about October 23, 2014, for the first time, Plaintiff was apprised of the allegations made against him in Gautney's report to Defendants. During the same period, culminating on or about October 28, 2014, Defendant Stiles secretly provided false or misleading information concerning the Plaintiff's alleged credibility as a police officer, knowing or having reason to know of its falsity, to then Crook County District Attorney Diana Vitolins, herself at that time an object of investigation by the Oregon Department of Justice. This was done to wrongfully classify Plaintiff as unemployable, utilizing sham procedures under the so-called "Brady Best Practices" manual, a privately authored document purporting to create guidelines for imposition of the label of dishonesty or lack of confidence on any police officer. Defendant Stiles' purpose in doing so was to further his intention to retaliate against Plaintiff for the arrest of his friend's daughter two months previously. His conduct in dealing with DA Vitolins effectively ended the productive career of Plaintiff as an Oregon police officer, and was utilized as the sham basis for his termination from employment by Defendant Stiles on or about November 14, 2014. Defendants utilized this sham procedure in cooperation with DA Vitolins and former Undersheriff Gautney to create a sham record to justify Plaintiff's termination from his vested public employment with Defendant City. These acts and omissions by Defendants were in fact utilized to deprive Plaintiff of his

COMPLAINT - 7

vested property right in continued public employment, without due process of law, in violation of rights secured to Plaintiff by the 1st and 14th Amendments to the U.S. Constitution; to retaliate for Plaintiff's protected actions and speech in articulating the factual basis for his successful arrest and subsequent prosecution of investigator Gautney's daughter for DUII, and to circumvent collective bargaining remedies and assistance from Plaintiff's collective bargaining unit.

21.

At all times material herein, Defendants knew or had reason to know that prosecuting attorneys in Oregon had met in private and without notice to the public, or opportunity to be heard, in order to compile and adopt a *de facto* legal manual entitled "Brady Best Practices", which purports to constitute a "consensus" approach to prosecutorial handling of so-called "Brady disclosures" involving police officers. However, at all times material Defendants *further* knew or had reason to know that those privately adopted "Best Practices" had no rule of law, had not been adopted with any due process to either Plaintiff or to the public, were in fact matters of public concern, and violated Plaintiff's rights to due process of law within the meaning of the 14th Amendment of the U.S. Constitution. Having this knowledge or reason to know of its lack of legal basis, Defendants nevertheless subsequently used this process to terminate Plaintiff from his vested public employment, without due process of law, and in retaliation for Plaintiff's speech and conduct in furtherance of the arrest and conviction of the daughter of Defendant Stiles' friend and associate, former Undersheriff Gautney.

22.

The so-called "Brady Best Practices" Manual does not meaningfully limit the discretion of a prosecuting attorney to effectively end the working career of a sworn and serving Oregon police officer, or establish objectively measured standards for application of the career-ending label of

COMPLAINT - 8

"Brady Cop".  This was known by Defendant Stiles when he undertook the contact with DA Vitolins described above.  Rather, among other things, the Manual arguably provides that a prosecuting attorney may send a "Brady letter" to a police officer's employer for at least two separate reasons:  one untrustworthiness, and the other "lack of confidence" of the Prosecutor. "Lack of confidence" lacks any objective standard; is a standard not subject to either notice and opportunity to be heard by those impacted prior to adoption, or to objective standards which arise under the 14th Amendment's principles of substantive due process violation, for arbitrary, irrational or capricious conduct by a local government or officials.  It is the abuse of the "lack of confidence" standard which was employed by Defendants, in active concert and conspiracy with DA Vitolins and former Undersheriff Gautney, to wrongfully terminate Plaintiff from his vested property right in continued public employment, as set forth with particularity herein.

23.

Defendant Stiles conspired with then District Attorney Vitolins to create a finding, based on agreed and purely subjective characterization without basis in law or in fact, to label Plaintiff as a police officer in whom the District Attorney "lacked confidence" under the "Brady Best Practices" Manual.  On or about November 12, 2014, Defendant Stiles informed Plaintiff he would be terminated if DA Vitolins "found" that she "lacked confidence" in his ability to perform the duties of testimony of a police officer, then Plaintiff could no longer have his job. Defendant Stiles then conspired with DA Vitolins to falsely label Plaintiff as an officer in whose ability she "lacked confidence", without objective basis in law or in fact, and without disclosure of the factual basis for retaliation against Plaintiff for the arrest of his friend and colleague's daughter; all contrary to the rights secured to Plaintiff by the United States Constitution, Amendments I and XPV, by the Equal Protection Clause, and by State law applicable in the

COMPLAINT - 9

circumstances.

24.

On or about November 13, 2014, DA Vitolins authored a letter reciting the language Defendant Stiles required to justify termination on 'Brady Best Practices' grounds,  which was then claimed by Defendants as  the necessary "cause"  for Plaintiff's termination of employment. In fact, his termination was not 'necessary' as a result of this opinion, and Defendant Stiles knew or had reason to know this to be the case at the time he terminated Plaintiff's employment with Defendant City.

25.

On or about November 14, 2014, Defendants wrongfully terminated Plaintiff from his vested public employment as a police officer, causing Plaintiff the damage herein alleged.

26.

The inability of a sworn police officer to testify in court is central to his or her official duties, and as a practical matter, restricts the involved officer from overtime, promotion, duty and shift assignments, training opportunities, and other pay and benefits attendant to the property interest broadly defined as a vested police officer's right to continued public employment.

27.

To the extent required to preserve remedies arising under State law, Plaintiff has within 180 days of the date his claims herein arose, given notice of intent to sue in the manner required by ORS 30.275.

**FIRST CLAIM FOR RELIEF**

**First Amendment Retaliation - 42 U.S.C. ' 1983 Free Speech**

28.

Plaintiff realleges and incorporates paragraphs 1 through 27 above.

29.

Plaintiff, during the course of his employment with Defendant, engaged in protected speech and conduct mixed with speech, which were and are matters of public concern, by, during and after his arrest of Undersheriff Gautney's daughter, which resulted in her conviction of a crime or offense classifiable as a crime.

30.

The acts and omissions of Defendants and others set forth with particularity above were undertaken pursuant to a policy, practice or custom of Defendants to:

- Retaliate against Plaintiff and others similarly situated for articulating, recording or bringing to public attention in criminal processes and otherwise the selective enforcement preferences for family and friends of Defendant Stiles;

- Unlawfully establish or aid, abet and assist in the creation of what is in effect a fourth court system, whose actions summarized above have both prospective application and future effect which directly impact the rights secured to Plaintiff by operation of State and Federal law set forth herein, as well as to circumvent lawful collective bargaining processes and requirements for termination, while remaining unaccountable to Plaintiff or to the general public, by using concealed or undisclosed communications with prosecuting attorneys to either personally benefit themselves, or to harm others, including Plaintiff;

- Urging findings by the District Attorney unwarranted by law or fact, and with the actual appearance and façade of a court proceeding, but without notice to either Plaintiff or to the public either of the particular issues presented for its action, or with any meaningful opportunity to be heard by either Plaintiff, those similarly situated, or the general public; and adopting conclusions subject only to subjective standards, without rational purpose

COMPLAINT - 11

save accretion of power into the hands of a few, without knowledge of the practice by the general public;

- Keep the processes and standards by which Defendant City determines proper use of force by police officers in their employ concealed from the general public;

- Keep the processes by which Defendant establishes ineligibility of any serving police officer in its employ concealed from the general public, from Collective Bargaining Units for police officers, and from serving police officers, knowing those processes to be secret and established without due process, but having force and effect of law;

- Circumvent the collective bargaining process, and avoid obedience to any Arbitration Awards in favor of any of Defendant's employees;

- Discourage unionization and collective bargaining, and thereby free association within the meaning of the 1st Amendment, for serving police officers with a right to engage in protected union activity;

- Utilize friends and professional acquaintances in other police agencies for the purpose of creating sham findings by "outside" investigation, and in turn providing their findings to others, to further unlawful concealment of police misconduct within the City of Prineville and elsewhere in the Federal District of Oregon, and elsewhere;

- Punish exercise of any freedom of association or free speech secured by the First Amendment and available to Plaintiff and his spouse, as well as others similarly situated, by termination for such conduct and speech outright; or by termination on pretext for any enforcement action taken against individuals having social, personal or professional relationships with Defendant Stiles,  if he did not personally approve that enforcement action; or by misinforming Plaintiff's collective bargaining unit as to the true cause for terminations subject to collective bargaining grievance processes;

- Misuse the office of any prosecuting attorney to effectively prejudice their ability or

COMPLAINT - 12

willingness to prosecute cases of Plaintiff, under sham or pretext of good cause, in order to invoke the protection of prosecutorial immunity for any decision of the District Attorney undertaken within privilege against civil suit, and to protect the District Attorney's office from unwanted public scrutiny resulting from the reporting of their activities herein to both their employer and the general public.

31.

At all times material herein, Defendants acted under color and pretense of law, all without due process of law and contrary to rights secured to Plaintiff by Amendments I and XXIV, U.S. Constitution, and the Equal Protection clause of the U.S Constitution.

32.

At all times material herein, Defendant City's then-acting Chief(s) of Police and other unknown named individuals acting in concert with Defendants, actively participated in or materially aided and abetted the unlawful conduct set forth above.  At all times material, Defendant Stiles was acting as a final policy maker(s) for the Defendant Prineville Police Department of the City of Prineville.

33.

As a direct and proximate result of the acts and omissions of Defendants complained of herein, Plaintiff has suffered economic damages including lost overtime work, lost training and promotion opportunities, advancement, shift and duty assignments available, and inability to testify in the course of his employment.  Such injuries are permanent and continuing, and capable of being determined at trial, but in the minimum sum of $2,000,000.

34.

As a further direct and proximate result of the acts and omissions complained of herein, Plaintiff has suffered physical and mental pain, suffering, humiliation, worry, anxiety, fear, loss of earning capacity, loss of personal and professional reputation, all to his general damage, entitling

COMPLAINT - 13

him to an award of compensatory non-economic damage in an amount to be determined at trial, but in the minimum sum of $3,000,000.

35.

As a direct and proximate result of the acts and omissions of Defendants set forth herein, Plaintiff has been required to obtain the services of an attorney.  Pursuant to 42 U.S.C. ' 1988, as prevailing party Plaintiff is entitled to an award of reasonable attorney's fees, expert fees and costs incurred herein.

**SECOND CLAIM FOR RELIEF**

**(All Defendants)**

**14TH Amendment Due Process Violations**

36.

Plaintiff realleges and incorporates by reference paragraphs 1- 27 and 29-35 set forth with particularity above.

37.

The acts and omissions of Defendants set forth with particularity above caused Plaintiff to suffer loss of his ability to testify as a witness in a criminal prosecution, thereby eliminating a crucial duty to his liberty in pursuit of his chosen profession of law enforcement elsewhere, and resulting in economic damage in addition to non-economic damage set forth with particularity and incorporated by reference above.

38.

Defendants caused Plaintiff to lose the right and ability to testify as a witness in criminal prosecutions without due process of law, in that:

- The procedures for determination of police officer disqualification as a witness by a prosecuting authority provide no notice to Plaintiff and those similarly situated of the nature, content and effect of the process.  The process as challenged has resulted

COMPLAINT - 14

in a blanket determination of inability of a police officer to testify as a witness, as opposed to his or her inability to testify as a police officer in a proceeding currently pending before a criminal court, with no effective opportunity to be heard. It is impossible to meaningfully defend in any "name clearing hearing", where no charges are produced, and no public consideration or oversight of the actions of Defendants in supplying information to the decision-maker, here the prosecuting attorney, is provided for;

- The communication of facts and opinions relating to any prosecutor's consideration of disqualification of a police officer for purposes of all cases, and not merely a pending matter before a criminal court, is a serious matter of public concern;

- The use by Defendants for career-ending 'independent investigation' of Plaintiff by a known close friend and associate of Defendant Stiles, former Deschutes County Undersheriff Gautney, was and is arbitrary, irrational or capricious within the meaning of the 14th Amendment, in the circumstances presented.

### THIRD CLAIM FOR RELIEF

### (Defendant City Only)

### Negligent Hiring, Retention and Entrustment

39.

Plaintiff realleges and incorporates by reference paragraphs 1- 27, 29-35 and 37-38 set forth with particularity above.

40.

At all times material herein, Defendant City knew or had reason to know of the acts and omissions undertaken as the policy and practice of Defendant City by virtue of Defendant Stiles' pronouncements, voiding all previous policies' as alleged with particularity above, and knew or had reason to know of Defendant Stiles' conduct and speech in furtherance of the wrongful conduct

COMPLAINT - 15

alleged with particularity herein.

41.

Defendant City had a duty to Plaintiff and those similarly situated to hire and entrust the duties of Chief of Police only to those performing those duties in accordance with applicable law; a duty to train Defendant Stiles in applicable law in particulars alleged herein, and to retain him as Chief of Police and Defendant City's sole policy maker for employees of the Department of Police of Defendant City,  only if he performed his duties competently, and in accordance with applicable law.

42.

Defendant breached its duty to Plaintiff set forth with particularity herein by negligently entrusting the duties of Chief of Police to Defendant Stiles, negligently failing to train him and thereafter negligently retaining him as Defendant City's policy maker notwithstanding its full knowledge of the wrongful conduct resulting in Plaintiff's sham termination, as set forth above.

43.

The acts and omissions of Defendant City caused the economic and non-economic damage to Plaintiff alleged with particularity above and incorporated by this reference.

**Demand for Jury Trial**

44.

Plaintiff demands jury trial.

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against Defendants, and each of them, as follows:

1.    On Plaintiff's First and Second claims for relief arising under Federal law, for Judgment in favor of Plaintiff and against Defendants City and Stiles, and each of them, for economic damages in a sum to be determined at the time of trial, but in the minimum sum of $2,000,000;

2.    On Plaintiff's First and Second Claims for Relief, for Judgment in favor of Plaintiff and

COMPLAINT - 16

against Defendants City and Stiles, and each of them, for non-economic damages in a sum to be determined at the time of trial, but in the minimum sum of $3,000,000;

3.      On Plaintiff's First and Second Claims for Relief, for Judgment in favor of Plaintiff and against Defendants City and Stiles, and each of them, for Plaintiff's reasonable attorney's fees and costs incurred herein;

4.      On Plaintiff's First and Second Claims for Relief, for Judgment in favor of Plaintiff and against Defendant Stiles, for punitive damages in an amount to be determined at trial;

5.      On Plaintiff's Third Claim for Relief, for Judgment in favor of Plaintiff and against Defendant City, for Plaintiff's economic and non-economic damages in the maximum amount allowed under any applicable limitation of the Oregon Tort Claims Act;

6.      For Plaintiff's costs and disbursements incurred herein; and

7.      For such other relief as the Court deems equitable.

DATED this 11th day of November, 2016.

BOILER LAW FIRM

*/s/ Jeffrey H. Boiler*
Jeffrey H. Boiler OSB No. 830219
Email: jboiler@boilerlawfirm.com
P.O. Box 101
Vida, OR 97488
Telephone: (541) 683-1901
Attorney for Plaintiff Bryan Burton